on behalf of the state, Mr. J. Paul Bach. Thank you. Good morning. Good morning, sir. You may proceed. Thank you. This court, counsel. Raul Perez-Gonzalez appeals his conviction for criminal contempt of court and a 10-year sentence. We've raised three issues in this case, three issues, and time permitting, I'd like to address each one this morning. First, before I begin, there was obviously an order from this court asking us to provide a copy of the guilty plea agreement. There is no written guilty plea agreement. There's no from my motion. We're endeavoring to try to locate and try to get the report of proceedings from the underlying guilty plea. Court reporter told us last week that she was going on vacation for a week. She was hoping to have it done before she left. She didn't. We're hoping to get it before the end of this month, certainly, but we're doing the best we can with that. Mr. Gleiser, is it my understanding that the trial judge who found the defendant in contempt did not have a copy of this plea agreement? That's correct. The parties below acted pursuant to stipulation that was signed by counsel for both sides. The judge who found my client in contempt was Judge Halleck. It was Judge Ackerman who, well, Judge Ackerman found me in contempt. The actual hearings were for Judge Halleck. Judge Ackerman vacated his findings. That's correct, yes. Was the contempt proceeding before Judge Halleck indirect criminal contempt or direct criminal contempt? This is really kind of a hybrid. I know in the brief I call it direct criminal contempt. In a way, it's direct because it occurred in the presence of the court, but the judge who actually heard the evidentiary hearing on the petition to adjudicate the finding of contempt was a different judge, so it was indirect as to Halleck but direct as to Ackerman, so I think it's kind of a hybrid there. I know you didn't raise this in your brief, but hypothetically, let's assume that your client had just received a plea agreement for 35, no promises to vacate the 15, which was at some point in 2010. We don't know the exact date, correct? I believe it was, I want to say August something of 2000. Correct. And then he refuses to testify. Correct. Is it your position that at that point in time, he would have no Fifth Amendment right, correct? That time for appeal had run? Yes. So if the state sought to call him and he refused, as he did here, and the court ordered him held, made a finding that he was in contempt of court, assuming that those were the facts, were all the procedural safeguards necessary provided to him? In terms of did he have a right to remain silent? No, in terms of notice, right to a hearing, et cetera. Well, the problem is that that hearing that he refused to testify at was an unusual hearing. It wasn't the trial. And part of the deal here was that my client had to testify against these other guys. And the hearing at which he was called to answer questions wasn't really a trial. In fact, Judge Ackerman says, well, he's not testifying now, right? And the press says, no, I want to determine this, whether I ask for a continuance of the trial of Mr. Rosales on Monday. It was almost an evidentiary deposition, I guess. He wasn't really testifying against Rosales. My question to you is, were his due process rights protected, assuming the conditions that I just mentioned, that he had just pled guilty, gotten a minimum, and had the state sought to call him two years later in a trial? I think he certainly had counsel present at that hearing. I don't think there's any argument that his due process rights to whether he remained silent or not were respected at that point. Was he ever admonished as to the potential penalties that he faced? Well, I think the actual quotes are in the brief. I think that Mr. Sands asked Judge Ackerman to tell him he has to answer. But no warning that he faced potential consecutive sentencing? I don't believe any particular admonishments as to that, no, Your Honor. With respect to the time in the hearing in which he was testifying, the state relies on people versus powers. How do you distinguish that case from the case before you? Powers in the case is that there's really no other case like this where a person has become an anticipatory contempt. In Powers, it was an attorney, I believe, who was told by the judge the trial starts now or no more contingencies, you have to start now. And the attorney said, no, I'm not going to. Whatever he did, he refused to start. That's when the act occurred. The trial was ready to go, and the attorney didn't act. The attorney refused to comply with the court's order. That was direct contempt. That was a pass. It was a pass. It was a violation of the court order, of the agreement. But wasn't that what we had here? It was a pretrial hearing, and the defendant indicated after several times questioning, and then he went away with his attorney and came back and said, no, what he means is he's not going to answer any questions. He says he's not going to answer any questions. He was never asked by the prosecutor at this hearing, are you going to testify Monday or Tuesday, whatever the trial held. And he's just asked questions at this particular special hearing, and he says, I'm not answering your questions. That's not what he, part of the terms of the plea agreement was that he testify against those guys. So there were two, three, four guys. And he was never called in front of a, at the trial, in front of a jury or a bench or whatever it was, a jury trial, to testify and ask questions against the people who were standing trial at that time. I think he, wasn't he called to testify against? I mean, you've said, you've said in your brief and you've said here today that the plea agreement was that he was to testify against the co-defendants. That's right. Now, it didn't say at a trial, at a hearing, you know, on the moon. It just said testify against them. So I mean, a fair reading of that, I guess, could be that whenever the state calls him to testify against these individuals, he must testify against them. Now, here we have a, the case was called of one of the co-defendants. It wasn't his case. It was Rosales' case was called before Judge Ackerman. And he was put under oath and he was asked specific questions that tended to implicate Rosales in, in the crime. Your Honor, the problem with that statement is that the Rosales case was not called. The case was going to be, was set for the next Monday. For that one. For the future. Well, it wasn't called to trial. Right. So. But I'm saying it was, I mean, it was, it was, the attorneys were all there, were they not? Yes. Rosales' attorney was at this hearing as well. Yes. Right. But it was, the hearing was called specially because the prosecutor had gotten word that my client was having second thoughts and was getting nervous about whether he could continue, go to trial that Monday or whether he needed a continuance. So this was a special, special hearing. Pre-trial hearing. Pre-trial hearing. Right. But he didn't, he wasn't actually brought before the judge, before the jury and asked, asked questions. He never really had a chance, he had changed his mind and still testified. Well, let me ask you this, if you're a trial judge, okay, you're sitting there as a trial judge and the state says, judge, if he's not going to testify, I need a date. And you're the trial judge and say, well, I don't know if he's going to testify or not. And so, what are you, what are you to do then? Are you to take, not take that testimony and panel a jury and then the guy comes up and says, I'm going to testify and then, and then declare a mistrial? Or do you, I mean, what do you do? Or go through the, I would call, or potentially call it a charade of after he testifies at this hearing, then when the trial actually goes, then call him again to see if he's going to testify? I think the judge should rely on the good faith of the attorneys. And if the prosecutor says, I don't believe this witness is going to testify, I need a continuance, the judge can grant a continuance. Which actually did happen. Which did happen then. And here's the problem with your argument. One of the problems that I see with your argument is that he was called anticipating a trial. And then, while the contempt is pending, the trial occurs. And throughout that period, he's represented by counsel. He never notifies the state, hey, I've changed my mind. I'm going to offer my testimony now. He's represented by counsel throughout. Correct? Correct. And then he is not found in contempt of court. The trial court doesn't rule on the contempt, which is now punishing him for past conduct. Not anticipatory contempt, but for past conduct for refusing to testify in Rosales' case. That doesn't occur until May 2nd of 2012. How can you possibly argue that he wasn't refusing to testify at that trial? Easy, because the petition for adjudication of contempt says he failed to testify on October 18, 2012. And continues to refuse. Read the next paragraph. Well, the stipulation was he refused to testify on October 20th. The law says you can't be held in contempt for refusing to answer an irrelevant question. Our position is this hearing on October 28th was an irrelevant hearing for purposes of the prosecution against Rosales. I think that's an excellent point. The problem is that he continued to refuse to testify. And doesn't the state allege in the petition for contempt that he continued to refuse to testify? I don't have a copy of the petition in front of me. I don't have it in front of me. I know it's in the stipulation. Here's what they say. The state alleges in their petition for contempt that Robin P.R. Gonzalez, outside the presence of the jury, was called to the witness stand, swore under oath, and then was asked substantive questions by Assistant State's Attorney and refused to answer questions. And then goes on to say he refused to testify despite the court's order and persists. This is paragraph four. And this is talking about the present tense. Robin P.R. Gonzalez refused to testify despite the court's order and persists in that refusal to testify, which I acknowledge is an unusual procedure here, but the bases were covered. He was warned. He refused to testify throughout the trial. And then he was found in contempt for his refusal to testify. The evidence that was presented at the hearing, the adjudication hearing, was by stipulation. The stipulation, I don't believe, ever said that he is continuing to refuse to testify. They say as seen by the attached report of proceedings, he didn't answer the question. The attached report of proceedings was from October 28th, not from the trial. If I could just go on back to whether, even if you're going to say it's not anticipatory, there's still a minority agreement here. The agreement was that if he was going to get a 35-year plea, a 35-year deal, and if he testifies, the state says, we'll come back and think about whether we want to reduce the term by 10 years. That was the deal. Within the discretion of the trial court to remove that condition of 15 years. Correct. And my client is not protesting the 35. He pled to 35. He'll accept it. He'll do it. The problem is the state also was part of the agreement as well, and they breached the agreement by seeking more time. In exchange for his testifying, we will offer him this. If he doesn't testify, or if he does, when he testifies, when he testifies. When he testifies. Within our discretion, we'll remove the 15 years. If you're not submitting that the state was saying, if you don't testify, we're not taking off that 15 years. The defendant given the right to not testify was not an option, was it? Yes, under the terms of this agreement. It's civil and eligible. They're liquidated damages. You're getting 35, and if you testify, we'll come back. No, it doesn't say if you testify. It says when you testify. And that's why I think, Mr. Glaser, that transcript is important and should have been a part of this record. Because that's the issue. When you testify, within our discretion, we can remove that 15-year add-on. I don't think anywhere it says, if you don't testify, you're stuck with the 15 years and that's all you have. Why would the state give anybody that type of bond? I don't know, but they did here. And that was the deal, that when you testify, as we said in the brief, what if all the other co-defendants pled guilty? Would my client not be able to claim any benefit because he didn't have to testify because they never needed him? He's not complaining about whether he should have the 15 knocked off. That's not the problem. The problem is there's an agreement that you get 35, and if you testify, and when you testify, consider, guys, in our discretion, we'll knock it off. Fine, but it doesn't mean you can add 10 on top of it. Well, so when you testify, what are they making a determination as to what they should knock that 15 years off? Probably how well he testifies, whether they feel he wasn't being truthful in his testimony. Not that he has the option of not testifying. I mean, you're saying he has the option of not testifying. If he doesn't testify, he's stuck with the 15. I suspect the state in the future, or after this one, will be drafting better agreements than they did here. But this is no less a due process violation than in Woodfield, where they agree to a sentence, and later they want, oh, by the way, you also have to do MSR after he pleads guilty. You can't do that. This is not like Woodfield. Well, in that sense, I think it is. Your client got the minimum. Yeah. Which brings up another question. How could the state have fulfilled the agreement if they were going to knock off the 15? How could they have done that? Well, the state can come back, vacate the plea, enter some new factual basis that doesn't include the use of a weapon, having them agree to murder without a weapon or some other type of offense. File a new information. Pardon me? File a new information. It's possible. You're arguing that this is a built-in sanction. Yes. But wouldn't that violate due process if he was never called to testify? I mean, part of the agreement is I'm going to give you the minimum if you agree to testify. Now, you may never testify, and then you're going to do this minimum. But you're arguing that if he's called to testify and he says, I'm not testifying, that the 35 is a built-in sanction. But if it's actually a built-in sanction, that's a due process violation in and of itself, that he's being sanctioned, he's being punished, when he was never even called to testify. Well, I think the parties can certainly, if it's a contract type situation, the parties can negotiate a contract as long as it's not illegal. Well, it is illegal. If your suggestion is that your client could not be called to testify because he chose to just take the 15 years, that means that the policy that the public has a right to every man's evidence would have been violated by that agreement, and that's against public policy, and the state cannot reach such an agreement. Well, but the agreement was— But in exchange, you have to refuse to testify if you're called by the co-defendant. Could the state do that? Probably not. No. Right. They could not. But, again, here, the agreement was we're giving you a lawful sentence of 35 years, and if you cooperate with us, if we think you cooperate enough, apparently, we'll consider going back and cutting some time off your sentence. When you cooperate with us. That's lawful. I think the word is when, not if. If we're going to deem this a 1028 refusal of non-cooperation, then fine. Let's leave the courtroom and go, and my man does 35, and the state goes ahead with its trial. If I could just proceed briefly to the second issue, the denial of the motion to substitute judge. The state seems to be of the mind that there's no way to ask for a substitution of judge in a contempt hearing, and that's not the case. Our position is when the state files a petition for adjudication of contempt, it's a functional equivalent of an indictment or information. And in that case, as long as the defendant complies with the then-new statute, 114.5a, then he has the right to seek a new judge. The attorney here complied as best as she could with 114.5a. She filed a written motion within minutes after the case was before Judge Hallock. The judge before the judge ruled on any substantive matter in the case. She named two judges, and- Stop right there. Let's assume that they have a right to substitution of judge under a contempt finding. Would they have the right to request more than one? In the brief, I said, well, I kind of wasn't as definitive as I should have been. Because contempt doesn't have a maximum sentence, theoretically, a contempt finding could result in natural life imprisonment. Really? Yes. Then you're arguing that this 10-year sentence is unreasonable for a murder. It is. So how could and where could it be reasonable to sentence someone to death on contempt? Well, I didn't say reason. First of all, it's not 10 years for murder. He got 35 for murder. It's 10 years for refusing to testify. But the contempt on a murder case. If he got natural life, I'd argue that's excessive, too. But under the terms of a law of contempt, theoretically, it's theoretically possible to sentence someone to as many years as the judge wants to impose. Well, look at the Geiger case. Look at the Geiger case. I don't think they can do that. Well, Geiger was still pending. But anyway, Geiger tells us now 20 years is probably too much for something like this here. But by the same token, it doesn't mean that it's impassable. It's just it's an abuse of discretion. So the point is she tried to comply as best she could with 114A, and she did it. The Doss case from 1943, the Supreme Court said that the right to change their venue is a statutory right. Nothing from the Supreme Court since has said anything different. There is this Fourth District Peasley decision, which is actually a matter of Peasley, not people who are supposed to be there. I apologize for that. But Peasley relied on Doss, which, again, is a case where the defendant complied or didn't comply with the statute. And that's why these defendants in the case of the state sites lost their rights to substitution because they didn't comply with the statute. My client's attorneys did. Saying that contempt is sui generis doesn't mean there's no right to a substitution of judge. It means the cases are unique, they're individual. We review these cases on a case-by-case basis. What happened here was no different from any other case of indirect contempt where the judge actually is going to consider the evidence. It wasn't there when the contemptible act occurred. Certainly, if it was in front of Judge Warwick and he made a ruling there, bless your hearts, then there wouldn't be the same situation here. Certainly, if the defendant attacks the judge in person at the court, there's no right to a substitution of judge. They're clearly there if the judge finds them in contempt right there. But if there's an evidentiary hearing later, months later, there's no reason why the 114A shouldn't apply. Let me ask you, was your client ever arraigned and informed of the potential penalties for this conduct? I don't believe so, Your Honor. You didn't raise that in your briefs. No. Because contempt is not a felony. Typically, in the cases that I've read, the defendant is brought in, the jury is excluded, or if it's a bench trial, he's brought in before the judge. He's warned, he's told the penalties that he may be exposed to, and the court uses that as in an effort to compel the witness to testify. If he continues to refuse to testify, then, you know, there's contempt proceeding. And that's what did not happen on October 28th. You didn't raise that in your briefs. No, I didn't, no. But can we consider that? Your court can certainly consider issues on its own. To reverse? If this court thinks there's been some due process and violations and denial of criminal fairness, it certainly can rule that way. I think there's enough without it. And I also think we can go very, very briefly to the third issue about the excessive sentence. I do want to mention that the Geiger case, Geiger did go back, got resentenced, got 10 years. His appeal is still pending. The reply brief was filed earlier this month in the case, the Third District case, number 313-0357. Ten years was simply too much here. My client had no priors. There was no evidence of aggravations introduced at the sentencing hearing. We think this court should, at the very least, reduce this to a more reasonable term, which in our LMI precedent, would be no more than six months. Thank you. Mr. Glazer, you will have time for rebuttal. I agree with Mr. Hoffman. You may proceed. Good morning, Your Honor. Mr. Glazer. May it please the Court, I am Jay Hoffman from the State's Attorney's Board of Prosecutors. It's my pleasure to represent the people of the State of Illinois for this honorable court today. Some quick questions that were dealt with earlier. I think that this is direct criminal content. Judge Halleck here was really acting as the finding of fact of what went on before. But he vacated it. Judge Ackerman vacated that. He vacated his finding, but the allegation was still that criminal contempt happened in the court, before the court. So it's your position that the contemptuous act was the refusal to testify before Judge Ackerman, and not hypothetical based upon the evidence, that the petition for contempt included the ongoing proceedings, including the trial. You're saying it occurred right before Judge Ackerman, and that was it. I'm saying, yes, it occurred right before Judge Ackerman. Now, also, citing the Powers, we have said that even if it was before the actual trial took place, that was sufficient. And that would come into this. Powers is a lawyer's conduct, not a witness's conduct. It's not a plaintiff. I don't know what makes the difference, Your Honor. Some of the cases, some of the other cases we've cited are lawyers, I think, is it Kuntz and Kuntz, is the one where a lawyer files a civil suit? We're talking about a witness refusing to testify, not an attorney refusing to participate in proceedings. And the United States Supreme Court has said there's no such thing as anticipatory contempt. And you say that's dicta, but unless there's absent controlling precedent from our own Supreme Court or our appellate courts, isn't that dicta controlling? I don't think dicta is ever controlling. You don't? No. What would a dicta from the United States Supreme Court, absent controlling precedent from the Supreme Court? No, it's not a holding. It's not precedential? Well, it's suggesting. No, it's not mandatory to follow that as precedent. Your argument here is that this was not an anticipatory contempt situation either way. Well, either way, yes, because he was absent. Because he was called to testify and testified. Yes, and I've distinguished the civil contempt cases, and civil contempt has a different purpose and a different result. Civil contempt is not for punishing past conduct. Civil contempt is to, and not for the affront to the court. Rather, it is to help the opponent. It is to let the opponent get their evidence out. And it's for what's going on at that time and the future. You hold the person, if they don't testify, until they will testify. So it's different than just circumstance. And that's why I would disagree that Powers is not on point because Powers has to do with punishment for a past act, whether it's the attorney or whether it's the witness who won't testify. It has to do with the affront to the court. How do you, your opponent is relying on Matos. How do you distinguish Matos from the case, from Powers and from the case before us? Well, Matos, again, is other jurisdiction precedent. It's similar to this case. Johnson is similar to this case. I would say that there is no on-point precedent here with a witness, but Powers suggests that this situation can be punished as criminal contempt. Were there attempts made between the date when the defendant was called before Judge Ackman and the trial of the case to bring the defendant back in? Was there any attempt? Does the record reflect there was any attempt? I don't know if any attempt was made by either side, either by defense counsel to try and avoid him being held in contempt or by the prosecution. I do not know. I don't believe it's in the record. And would it be your position that if there was going to be such an attempt, the defendant should have come forward? Well, the defendant could have, yes. But, again, we could have, both sides, either side could have come forward and said, well, you know, will you testify now? However, I don't think it was incumbent upon us with regard to this particular criminal contempt. Was the defendant entitled to be told what penalties he faced as a result of his refusal to testify? I figured you were going to ask me that. I don't know. All I can tell you is that the case that I cited that has the best analysis of what rights the defendant has in criminal and civil contempt is Inmate Betz. Betz goes through, and which I have cited in my brief, it's a Fourth District case. It goes through a rather long analysis of what the regulations are. The only one I remember, I think, is that up to six months, up to 180 days, you can be sentenced without the regular procedure. Anything over that, you have to have a trial. You're entitled to ordinary protections of a trial, which includes the right to be told what penalties you face. Well, but you're not entitled to, and I don't remember which ones, you're not entitled to all the ordinary protections. And it goes through that. I just don't remember if the being informed of the sentence could be consecutive and how long it could be is one of those. I don't. I'm sorry. That's not raised in the briefs anyway. So you're entitled to a jury trial, right? I mean, this defendant was entitled to a jury trial as a due process. Yeah, I believe so. How about the preemptory challenges? Would the defendant be entitled to preemptory challenges? Again, Your Honor, I don't remember. And there's no allocation. What about challenges for cause? There's no allocation. Well, if he was entitled to a jury trial, I would guess that he would be entitled to all those. But I'm not sure. Those are under statute and those are under Supreme Court rule. I'm trying to move on into this issue of the SOJ. And would you say that a defendant would be entitled to an SOJ for cause under 114.5d? In a contemporary? Yeah. No, I've cited Doss, Parker, and Beasley. Not even for cause. I mean, if this judge was, and, you know, I mean, let's talk about the wild west. This judge is absolutely 100 percent prejudiced against this defendant. And it comes out, the judge makes outrageous statements. I mean, it didn't happen in this case. But I'm just, as a hypothetical, that defendant would have to go to trial on most contempt proceedings in front of that judge because that defendant did not have the right to challenge that judge or SOJ that judge for cause under D. The criminal causes for substitution of judge do not apply. That's what Doss, Parker, and Beasley say. It doesn't sound like much due process to me if you can't have an SOJ for cause. Well, then there may be a freestanding cause under the due process clause. Why doesn't Kuntz, I mean, Kuntz is the latest Supreme Court statement on this issue of whether these, whether 114.5a applies. And you say, I mean, you're looking back at these cases from the 40s and you're saying it doesn't apply. Tell me why Kuntz doesn't apply. Because Kuntz does not ever overrule Doss or Parker. Why not? Because it doesn't address the issue. It sort of presumes, and it mentions the civil rules, too. It says, oh, and this applies under the civil right, too. But it doesn't say, it never clearly says that they apply. And in fact, it eventually denies the substitution of judge, says it was proper to deny it under different grounds. But it does eventually deny it. Well, let me ask you this. If there was, if you would agree that somebody is entitled to a substitution of judge on a contempt finding, how many substitutions would he be entitled to? I mean, if 114 applies. I've argued in brief, and I would agree with what Your Honor said earlier. I was thinking myself, Geiger, I mean, how are you going to give someone life in prison if Geiger says, you know, 20 years is too long? I don't think that's possible. And it's important to remember, also, when you're speaking of the substitution of judge, although it doesn't specifically say it, the 114, it's in the criminal code. And it speaks of criminal code matters. And contempt proceedings, as the Ellen Spring Court has said, other courts have said, are sui generis. They're not under the criminal code. And so, you know, another reason that that wouldn't apply. But there are also cases dating back to the 1920s that say, in criminal contempt proceedings, criminal procedural rules apply. In general. There are cases that say that, but, you know, it's a torturing process. I, you know, one of the cases they cite for this, Holder v. Clark, cites people v. Mitchell or something like that. And if you look and see what that court cites, it cites a 57 Supreme Court case, people v. Doss, for the proposition that the criminal applies. Well, no, it doesn't. Doss didn't involve the criminal. Doss involved the freestanding venue section, which only applied where the judge who had been impugned by the person, they had a right to substitute from him. So you go back and look through all these cases, and I'm not sure they were all founded. But beyond that, as I said, Coombs never just seemed to presume that the criminal and white civil rules applied and did not say anything about Doss or Parker. And Peasley has followed those cases subsequently. Well, SKS also went the other way. Yeah. Again, presuming that it applies. Yeah, so this is an issue. I want to just take you back to this other point about anticipatory contempt. Your position is this was not. He's being punished for that conduct, past conduct, correct? Are you familiar with any case from any jurisdiction where a witness has been held in criminal contempt for refusal to testify at a proceeding before that proceeding has begun? Do you have a case that says that? At a trial? Yes. Before this? Yes, I cited Johnson too. When it went back down, and it's slightly different, but when it went back down, they had a pretrial interrogatory or deposition, and the person was held for not testifying at that, which was before trial. Right, well, it's at that deposition. Yes. Again, when you're being held in contempt for refusal to testify at a trial, and I'm looking at United States Supreme Court case, United States v. Wilson, where the court discusses the purposes of Federal Rule 42, which is just a codification of common law, the court's authority to hold a witness in contempt. But the court talks about in an ongoing trial with a judge, jurors, counsel, and witnesses all waiting, Rule 42G, which is our common law contempt power, provides an appropriate remedial tool to discourage witnesses from contemptuous refusals to comply with the lawful orders essential to prevent a breakdown of the proceedings. So the court here, he's anticipating a refusal before the proceedings begin. And Wilson and all the other cases talk about the witness being brought in, the jurors being excluded, the witness being told what penalties he faces, and being put into the crucible of the trial on the witness stand and given the opportunity to make that decision. Do you have a case, I'm just asking, is there a case that you have that says you can do this, this procedure, call a witness days before the trial, which is, I don't know what the date was, but it sounds like it was probably late in the week, Thursday or Friday. I think it was Thursday or Friday before the Monday trial, I think. Why not just bring him back over and put him on the stand after the jurors and panel and say, look, Mr. Witness, you're facing consecutive punishment. There's no limit on what I can give you. Because if they would have done that, Justice, we wouldn't have any cases to hear. So sometimes they do things differently. Counsel mentioned the Mattos case. He relies on Mattos. That's a little different here because you didn't have a Friday to a Monday trial date in Mattos, correct? I mean, you had some indefinite trial. There was no trial date set. There was no hearing set for which this person would have been held in contempt. As I recall, it may have been Mattos I was going to answer, Justice Burkett, saying that one of the cases they cite, the court said that we realized that had they brought the person in at trial, jeopardy would have attached and it would have created a problem for the prosecution. Now, that court went on to say, but we don't think that's a big enough concern. But again, that's not an Illinois case, and I would suggest that that should not be followed because it is a big concern. Well, I mean, the state asked for a date. I mean, couldn't the state have just simply, you know, taken the word of the defense attorney or the witness's attorney and said, you know, I know he's not going to testify, and then got their date, and then called him up at the trial? And then, you know, prepared for the trial, figured he's not going to testify, and then called him up at the trial. Why go through this procedure that, you know, if we affirm and put this out there as an opinion, you know, we're going to have this happen all over the place. I assume I can go on. Yeah. Again, the state, the trial date was already set. Are you suggesting they should have asked for a continuance? Well, I mean, the state came in and said, Judge, we hear he's not going to testify, and if he's not going to testify, we're going to have to ask for a date. I mean, all that the court needs to do is look at the witness's attorney and say, is he going to testify? And the witness attorney says, no, he isn't going to testify. And then the court goes, I'm going to give you your date. And then when the trial comes up, the state's all prepared to go without him. Bring him up. Jury's in the box. You know, not in front of the jury, but bring him up. Ask him your questions. And as Justice Burkett says, put him in the crucible of the trial. Say, we have a jury right now. You know, we're going to ask you these questions. We're going to bring the jury back in. We're going to ask you these questions. Are you going to testify? Ask him some questions. He doesn't testify. And we have him not testifying at the trial as opposed to this pretrial hearing that nobody can seem to find a case in other than Johnson. How about powers? Well, powers, again, you're limiting it to a witness. But what about, you know? Yeah, and, again, I would say powers, although it's not a witness, is the same thing. It's contempt. It's the contemptuous act before the court. Of saying, I'm not going to testify. Yeah, like saying, I'm not going to trial. And remember in that case, the counsel also said, and my client is not going to take part in the trial. Perhaps that could have been done, Your Honor. But as often we say, you know, it could have been done that way, but that doesn't change what was done and the analysis of whether what was done was proper or improper or right or not right. If I may just. Well, I wanted to ask another question. Okay. I mean, I want to get back to this, whether he gets two challenges or one, assuming the statute applies. You know, Geiger says 20 years is too much in a situation like this. So maybe we do have a blueprint now that 20 years is too much. But is 16 years too much? We don't know. The Supreme Court hasn't answered that question. 16 years is a class X sentence. Yes. So, I mean, why wouldn't he get, he's exposed, he's exposing himself, theoretically, to class X sentencing. Why wouldn't he get two challenges? Why wouldn't he be able to name two judges if the statute applies? Well, I think the statute says murder or life imprisonment. Class X. Well, maybe I misread it. I thought it was class X. And now we read it. Yeah. So. But, I'm sorry. Go ahead. No, I was just going to move on to the sentencing, just some final things. Counsel is right. Geiger has been re-sentenced to 10 years, and he's again before a third district. It's on appeal. This court, and I just want to say that the defendant here, Mr. Perez-Gonzalez, got half of what Geiger's original sentence, which was overturned. And, indeed, has not some of the factors that were involved in Geiger. If you read Geiger, they said, well, he had a belief, but a wrongful belief, that he had a Fifth Amendment right. This defendant has never said that. As a matter of fact, it was admitted below that he didn't. He acknowledged that again today. Yeah. He acknowledged that again today. So, that's not there. Let me ask this on that point. The trial court found that there was no provocation. I mean, isn't that really inconsistent with reality? And, actually, what you even state in your brief. He chose to protect the gang instead of testifying for the government. I mean, it's inherent in gang cases. He's in the penitentiary. I mean, there are actually Supreme Court cases. I think Theodore is one of the cases that talks about the influence of gangs on witnesses. And is that finding that there was no provocation consistent with reality and the facts of the case? It was a gang case. Well, if there was no evidence, again, and that's what I was going to next. In Geigel, they said that there was evidence that other witnesses had been threatened. We don't have that here. And my statement that he decided to follow the rules of the gang rather than the rules of the country doesn't mean that he did so because he was threatened. He did it because he's a gang member. He did it because he's a gang member. If we can go real quickly. And, Mr. Glazer, I'm sure we'll give you more time since we've taken so long. Mr. Glazer raises the point that this is a contract. He complied with the contract. He could have testified and maybe got rid of that 15 years. Or if he didn't testify, he had what he had. Is that how you read the contract? Well, yeah, as I read the contract, he was given the 35-year sentence. He was told that if he testified and it was agreed that he testified and complied and they were happy with it, the 15 years would be taken off. And as Mr. Glazer said, I think probably that would have been done by vacating the guilty plea and repleting and then not putting the gun in the factual matter later. But, yeah, I think that's what the contract was. I just disagree that that means it's liquidated damages, which takes out the chance for contempt. So are you agreeing with Mr. Glazer that he had the option of testifying or not testifying? Well, he chose not to testify. Did he have the option in the contract of not testifying? Was it if you testified or was it when you testified? Whether it's if or when, you always have the option to break a contract. Well, I could have not shown up here today. So if he broke the contract, then wouldn't his penalty for breaking the contract be he was stuck with that extra 15 years? Yes, but that doesn't mean that he's also not subject to contempt. As I said, contempt is an affront to the court, his contract with the people. Also, we know, as I said in my brief, if you're on probation or MSR and you violate by committing a crime, you can be convicted of that crime in addition to having probation or MSR revoked. Just because there was a contract with the people absolutely does not control whether or not he could be charged and convicted of contempt. For disrespecting the court by refusing to testify. Yeah, and remember here, he was asked these questions. He just wasn't said, are you not going to testify? He was asked the specific questions, answered no a few times, and then explained what his no meant, that he wasn't going to testify. Then the ASA specifically asked the judge to order him to testify. The judge did, and he didn't. Can the state, to follow up on Justice Shostak's question, the state can't negotiate whether a witness will or will not testify? I guess I don't understand the question. If, as opposed to when, the plea agreement didn't leave the decision to testify to the defendant, did it? Well, again, I would say. Do you understand the point? You can't bargain away and give a witness the decision to whether or not he or she's going to testify unless they have some privilege, a Fifth Amendment privilege to refuse to testify, a Fifth Amendment right to refuse to testify. You can't negotiate whether or not a witness is going to testify, can you? Well, because you can subpoena them? Correct. Well, that's right. But, again, in reality, just because you have a contract with someone doesn't mean they're not going to break it. And then they suffer the consequences of breaking the contract. So, yeah, you're right. You can subpoena someone, but as these other cases show or Geiger shows, a person can decide that they're not going to testify. They can refuse to testify for no good reason. And then suffer the consequences. And then suffer the consequences. My point is that if he was left with the impression, we don't have the agreement, we don't have the transcript, but if he was left with the impression that it was his decision as to whether or not he was going to testify, that would be against, that agreement would be against public policy, wouldn't it? Any agreement that gave him the right to decide whether or not he would testify would be against public policy, wouldn't it? Yeah, I think as you said before. So I guess we have to look at what the agreement was. Unless, well, so you're suggesting that the agreement may be void because it was contrary to law? It may be. We haven't seen it yet. If it gave him the right to not, if it gave him the right not to testify with impunity, then it very well may violate public policy. I suppose, but it depends upon how it was negotiated. I mean, certainly you can always subpoena the person. If you say, you know, you have a right not to come in unless we subpoena you, then that's different. Didn't you feel that the agreement between the state and the defense with respect to this sentence here would have been something that the appellate court would have wanted to look at? I guess I just presumed, and as I recall, there was a phrase in the defendant's brief recognizing that they believed that the agreement was legitimate and that they weren't questioning it. And so I had no reason to question it. I just presumed that it was valid like any other agreement when they try to deal with someone to testify. Until the defense starts picking it apart, right? Well, but they're not, he's not picking apart the agreement. Again, they didn't say that the agreement was invalid. Matter of fact, it's part of his, it's part of the basis for his argument. Well, he doesn't want to say that now because he got the minimum. Well, it's part of the basis for his argument that the agreement was valid because he's saying, well, this is liquidated damages. The agreement, he's basing his whole argument on the agreement being valid. So, you know, and as I said, I had no reason to question or think that it was any different than any other agreement I've seen in any other case for testimony by a co-defendant. So you agree that the agreement states, as both, it seems like both of you said, if he does this, then this happens. That to interpret that agreement otherwise wouldn't really matter because you're saying contempt is not so much as, with respect to the agreement, as so much as it is with the court. It's what I'm hearing you say. Yes. So regardless of what the agreement says, if or when, the contempt is in the front to the court. Yeah, because the contempt was in the front to the court. And to me, whether it says if or when wouldn't make it legitimate or illegitimate. Because, you know, again, we know that if a person decides not to testify, it doesn't mean that it's lawful, but they can breach their contract. Anyone can breach any contract they want, any time they want. Depending on how the contract is worded would make a determination whether to breach the contract, correct? That's true. That's true. But the if or when I don't think would make it illegitimate as a contract. I don't see that that difference in verbiage would matter. Great. Thank you, Mr. Hoffman. Thank you. Mr. Blaser, you may proceed. Mr. Blaser gets a half an hour. I just take as much time as I need. We're used to a long time, so. Sorry. Let me try to go backwards, west-in, first-out here. Regarding the accuracy of the record, I understand why the court would want to see the guilty plea agreement and the hearing, and we're endeavoring to get that to the court in time, and we'll do our best on that. But I do want to point out that both sides did agree. There was a stipulation. Both sides agreed to it. Both sides on appeal agreed that the stipulation was accurate. There is a case, which I did give to Mr. Hoffman before our argument, Peeler v. Sins, S-I-E-M-S. It's 170-113-894. It's from this court from 1988. 894? I'm sorry. 894, yes, where the state tried to, on appeal, after the defendant's brief was filed, seek to withdraw an agreed statement of facts that was entered below the trial court level, and this court said it's too late, we can't do it. Even though the statement of facts, the facts in the statement of facts were inaccurate, we're stuck with that in the interest of whatever. You're proceeding on the facts in the stipulation? Correct. Or the court in the indirect? Correct. And if the conclusion is something else, then obviously we have a different case, and we may want to ask for more briefing. But we're going to take the state, and the parties below it, their word as far as stipulation is concerned. Let's talk about that Parker case a second. I want to get to Parker because the state cited Parker again. It's cited in their brief. Parker is not much of a case. There's basically, it's a procuring opinion. It's about eight, ten paragraphs long. The defendant in that case, the contender in that case, represented himself pro se, I think at trial, but also before the Illinois Supreme Court. The court first, there was an issue raised about right to substitution of judge in a contempt case. The Supreme Court first looked and said, without giving much reasoning, that the request didn't comply with the Venue Act, which is the Substitution of Judge Act. So we're not, and plus, then they go on to this, you know, Sui Generis thing. So it's not much precedent. Doss is the better case, and as far as, you know, Peasley and all those cases, you know, the state wants to knock the relative weight of what dicta is and how persuasive dicta might be. In the Doss case, I'm sorry, in the Peasley decision, Doss first addressed the substitution under the terms of the Venue Act, under the SOJ Act, and then it went on to talk about, oh, and by the way, additionally, you know, they go on to talk about Sui Generis. That's dicta too. And it said the petition didn't comply with it. Right, right. And it's important to look at some of these old cases. The Venue Act changed over time. Some of these early cases in the 20s and early 40s said that in cases where brought by indictment or information, blah, blah, blah, our current one doesn't read like that. Your Honor is correct. It doesn't mention, your Justice Burke is correct. It doesn't mention when a defendant is charged with a Class X felony or punished by death or life, and you get two automatic parenteries. The current 114.5 just says with intent is after a cause. Involving one defendant doesn't say a felony cause, a misdemeanor cause, a contempt cause. It just says a cause. So those cases that rely on the old versions of the Act just don't really apply anymore, except for the sake of saying the statute does apply. So the statute applies. My client and his attorney comply with the statute here. Go on to this sentence real quickly. Did he comply with the statute by raising two SOJs? Arguably, yes. And I realize that Geiger says 20 years is too much, but Geiger says 20 years is too much under the facts of Geiger. Maybe there's a case out there, and I can't even think of one, where a defendant might merit getting natural life imprisonment for contempt. I don't know how, but maybe there is. But it's certainly not ñ there's nothing saying he couldn't get natural life imprisonment so long as it's available, just as natural life imprisonment is available in murder cases but doesn't go in every case. If he's entitled to one and he lists two, is that a problem? State cites a case from this Court saying that that voids out the whole motion. So I understand that. But by the same token, I think that this statute can be read in this case as to permit two judges in this case. Now, going to sentence real quick, I don't want to let this go out without commenting on Justice Burkett's comment that my client got the minimum. He didn't get the minimum, he got 35. He's got 35 years in prison, so he's not walking out after 20. The minimum with the add-on. Right, okay, but it's still 35 years. It's a long sentence, there's no doubt. But it's the minimum of what he could have gotten. He couldn't have gotten any less. That's the minimum. I think we're splitting hairs, but again, 35 years I think is a long time. I don't think you're saying it was minimal. Again, looking at whether 10 years was the right sentence here, the State wasn't damaged by my client not testifying. The State prosecuted Rosales, they got a conviction for Rosales. On all the charges that they charged him with? They got him for murder. They got him for what he's doing, 35 years. Not as the shooter. Well, you know, maybe they don't have a case for that. They have three other witnesses testify. They have other guys all testify. They still didn't get the shooter. The jury didn't believe the State's case. I don't know if my guy would have made a difference. Maybe he would have, if your black guy would have testified, right? Well, maybe not. We don't know. But the point is the State did prosecute that man and got a conviction. My client agreed he didn't answer the question, and the judge didn't answer the question, other than the fact he was entirely respectful. He didn't scream. He didn't throw anything. He apologized for his conduct at the sentencing hearing. He had no priors. He was working. He was trying to get into ECC. He was only 18. He was 18 at the time of the shooting and maybe 20 at the time of the hearing. Some of the federal cases talk about perjury and looking at a sentence for perjury. Correct. And here the sentence for perjury would have been a class 3 or no higher. He got twice as much time as he possibly could have gotten. He testified in his life. When he was sentenced, he already had a murder conviction. So, theoretically, we would not have been eligible for extended-term sentencing over 10 years. Theoretically, but, again, the courts talk about the difference between perjury and contempt, and it's not testifying. So it's just not right to sentence a guy more for not testifying than had my client taken the stand and lied, he would have gotten less. Or he would have gotten 6 as opposed to 10. But, again, my point is he could have gotten 10. Could have. Right, right, okay. As far as precedent, again, we think Mattos is the most applicable case because the defendant there was found in contempt before he was even called at trial. But there was not even a definite trial date. It was an undetermined date in Mattos, wasn't it? No, but the point that it was before trial is the key thing here. It's still anticipatory. We don't have any other cases like this. This is a case of first impression. But we think that Ohio, New Jersey, the Sixth Circuit cases we've cited in our brief provide persuasive precedent authority for this court to follow our position on that. The stand again says the defendant was being punished for his past conduct, and that would be what happened on October 28th, not for what happened at the trial, which we don't know he was even called for. Again, our position is 1028 was not a relevant hearing. It was simply a hearing to assuage the nervousness of the prosecutor. I understand why the prosecutor did it. I'm not saying he's a bad prosecutor, but he jumped the gun a little bit on this petition for contempt. He should have waited until the case was called for trial, called the guy, and then if he wanted to remain silent, fine. Does the record reflect when the prosecutor found out that your client was going to? Would that be important? I don't know if it would be important. Maybe, but I don't know if the record really shows where. If they had advance notice, say, for example, weeks in advance, then how can you really say that it would have obstructed the trial if they had these other witnesses? That would be true. I agree with that. It might have gone to maybe affecting the sentence as well. We're not saying the person, a witness, who refuses to testify can never be held in contempt. I mean, the way that I've seen in many cases is the witness is called, they refuse to testify before he testifies. The prosecutor gets worried when the person is being hesitant, move the jury out, have them take the stand, ask questions. The person says, I'm not going to answer questions. Fine, then you can hold them in contempt. Theoretically, we're splitting the atom here. I guess it's anticipatory contempt because he still isn't testifying in front of the jury, but it's close enough that I think it would be hard to argue that point there. Here, my client was asked days before the trial, and he was never asked. He was specifically asked by the prosecutor, do you mean to say you are not going to testify at the trial? He was never asked that. He simply said, are you going to answer questions? Period. No, then they went off and talked to his client, and then he came back and said, no means he's not answering it. Not yet, but didn't say when. Maybe he's answering then. They hook up over the weekend. Maybe the judge yells at him a little bit. He thinks about it. Comes back Monday and says, all right, I'm going to testify now. That never happened. Other than that, I also want to mention, the fed did sign a jury waiver, so to answer those questions, we have to admit the fed did sign a waiver as to that. Other than that, if you aren't standing for the questions, otherwise, thank you very much. We'll ask for the plea to be answered. Thank you. Thank you for your arguments on this very interesting case. We'll be taking it under advisement. May I adjourn?